People of State of Illinois ex rel. Paysoff Tinkoff, Appellants, v. Northwestern University et al., Appellees.

Gen. No. 44,077.

226

Opinion filed December 10, 1947. Rehearing denied February 19, 1948. Released for publication February 19, 1948.

PAYSOFF TINKOFF and PAYSOFF TINKOFF, JR., *pro se.*

SIDLEY, AUSTIN, BURGESS & HARPER, of Chicago, for appellees; JAMES F. OATES, JR., RALPH K. BALL, HOWARD P. ROBINSON and MARY V. NEFF, all of Chicago, of counsel.

MR. JUSTICE KILEY delivered the opinion of the court.

This is a mandamus action seeking to compel defendants "to allow and to admit" the registration of Paysoff Tinkoff, Jr., as a freshman in the College of Liberal Arts of Northwestern University. Defendants' motion to dismiss was sustained and the suit dismissed.

Plaintiffs appealed from the judgment of dismissal to the Supreme Court. The cause was transferred to this court because a constitutional question was not involved. (396 Ill. 233.)

■ After judgment and within thirty days plaintiffs made a motion for leave to amend their petition by adding an additional count. The court denied leave on the ground that the amendment was not for the purpose of conforming the petition to the evidence. The Civil Practice Act provides, in section 46 (1), for amendment before final judgment; and in section 46 (3) [Ill. Rev. Stats. 1945, ch. 110, par. 170, subpars. (1) and (3); Jones Ill. Stats. Ann. 104.046, subpars. (1) and (3)] for amendment "at any time, before or after judgment to conform the pleadings to the proof." The court ruled properly on the proposed amendment. (*McGlaughlin v. Pickerel,* 381 Ill. 574.)

■ The motion to dismiss admitted the facts well pleaded in the petition. The question is whether on those facts the trial court properly decided, as a matter of law, that the petition was substantially insufficient in that it failed to show a clear legal right to a writ of mandamus against the defendants.

Tinkoff, Jr. was born in November 1929; he was graduated, and received a diploma, from Senn High School, Chicago, in February 1945. The previous September he applied formally for admission to Northwestern University's College of Liberal Arts, and took and passed the requisite entrance examination. He was denied admission on the ground that, being fourteen years of age, he was too young for enrollment. At the time the certificate of his thirty-six high school credits and a letter from his father had not reached the University. Thirty-six credits met the entrance requirement of the University.

Following denial by the University, Tinkoff, Jr. filed a mandamus action in the Superior Court, seeking to compel his admission. The proceeding was dismissed

"with the understanding" that he would be permitted to register at the September term of 1945. Meanwhile, during the school year of 1944–45, he was enrolled in the University evening Commerce course, where he completed fourteen hours of work. In June of 1945 he was denied admission to the Commerce School summer course at the Evanston Campus. In September of 1945 he was again denied admission to the College of Liberal Arts. He was denied admission in these instances because he had filed the previous mandamus action in the Superior Court.

The grounds of the motion to dismiss were that no showing was made of a right in Tinkoff, Jr. to admission and no duty on the part of the University to admit him, and that the petition sought to join a mandamus action with an equitable action.

Plaintiff contends that the University is a private corporation affected with a public interest; that its charter was granted for 'the great public purpose of education of youth, and because of that purpose its property is exempted from taxation; that there was an implied condition and understanding in the grant that the University would perform its functions for the "common good of the public at large, and not for the benefit of a favored few"; and that Tinkoff, Jr. had the right of admission since he met the entrance requirements.

The charter of the University was granted January 2, 1851. It was amended in 1855, 1861 and 1867. The amendments are not important to this case. The charter provides that the trustees shall have power "to make and alter from time to time such by-laws as they may deem necessary for the government of said institution, its officers and servants; provided such by-laws are not inconsistent with the constitution and laws of this State and of the United States." It further provides that they shall have power to confer "on such persons as may be considered worthy" degrees

such as are usually conferred by similar institutions. It provides that the University's property should be held for educational purposes and not for the private benefit of trustees or contributors to the endowment. Power of visitation was lodged by the grant in appointees of the Methodist Episcopal Church.

There is no provision in the charter with respect to admissions. Section 8 authorizes appointment of a board to examine applicants for diplomas. Section 9 provides for legal proceedings to forfeit the charter for any act contrary to the grant. Finally there is a provision that the charter should be construed liberally ''in all courts'' to aid the attainment of the purposes of the University.

■■■ The University is a private charitable corporation (*Parks v. Northwestern University*, 218 Ill. 381), and its charter is a contract (*Dartmouth College v. Woodward*, 17 U. S. 517). The Dartmouth College case is authority for the following principles: That education is an object of national concern and a proper subject of legislation; that the grant of a charter by a State to a private educational institution is given in consideration of the benefits the public shall receive through the education of the youth; that the charter is a contract whose obligations cannot be impaired by law; and that the legislature has only such power over the chartered institution as was reserved in the contract. There was no power reserved by the legislature of Illinois with respect to the admission of students at Northwestern University.

■ ■ To say that the University though a private corporation is affected with a public interest is to beg the question. Those corporations are affected with a public interest which are amenable to State supervision (*Triner Corp. v. McNeil*, 363 Ill. 559, 572). We cannot say that a private educational institution is in a business essentially public in its nature rendering the corporation so engaged subject to public control, as a

telegraph and telephone company (*Inter-Ocean v. Associated Press*, 184 Ill. 438), or a virtually monopolistic warehouse (*Munn v. Illinois*, 94 U. S. 113).

In *Parks v. Northwestern University* it was said that the charter secures to all persons of good moral character who have made sufficient preliminary advancement, the benefits of the University. In that case the court was considering the question of the University's liability in tort. ᐧ Obviously the charter cannot secure to all who have made sufficient preliminary advancement the benefit of the University. A line must be drawn somewhere if there are more qualified applicants than can be accommodated. The educational facilities of this country have been strained to the utmost by the great number of post-war students. It is a matter of common knowledge that thousands have been turned away from most if not all of the colleges and universities in the United States.

Under its charter the University had the power to adopt whatever rules were necessary in its judgment to the proper attainment of the University's purpose. Its bulletin for the College of Liberal Arts for the years 1943–1945 regulating admissions expressly stated it was not possible to admit all who met the specific entrance requirements. For the years 1945–1946 the bulletin in addition stated that the University reserved the right to reject any application for any reason it considers adequate. Are we to say that it should have admitted Tinkoff, Jr., though the University considered its reason for rejecting him adequate? He had no right to be admitted. His admission rested in the discretion of the University. The allegation that he was denied admission contrary to an "understanding" added nothing to the force of the petition, even if the allegation were properly made. The only compulsion arising out of the University's charter with respect to admissions is that "no particular religious faith shall be required of those who be-

come students." There is no point before us based on breach of this command.

■ ■ Cases involving legislative control of State universities and schools are not helpful. The State through the legislature has no power to take from or interfere with the power of the trustees of the University to make such rules as are necessary to conduct the University's business. (*Dartmouth College v. Woodward*, 17 U. S. 517.) The State through its courts has not the power. There is no provision in the University charter that the rules enacted should be reasonable. The charter provides they shall not be repugnant to the constitution of Illinois nor of the United States. It is our view that the bulletins were within the University's power to promulgate; that the University was not required to give a reason for denying Tinkoff, Jr. admission; and that it could refuse for any reason it considered adequate. Plaintiff says he was excluded because he was under fourteen years of age and because he instituted litigation against the University. He says these are arbitrary denials. The minimum age provision for admission to the University of Illinois is fifteen years. (Ch. 144, par. 29, Ill. Rev. Stats. [Jones Ill. Stats. Ann. 138.022 (8)].) The University may have considered the commencement of the suit an adequate reason for denying Tinkoff, Jr. admission.

■ ■ Courts have refused to coerce private educational institutions in the exercise of lawful discretion. (*Booker v. Grand Rapids Medical College*, 156 Mich. 95, 27 R. C. L. 141, 55 Am. Jur. 11.) Plaintiffs have cited numerous cases to support their contention that regulations for admission to educational institutions must be reasonable. These cases involve public schools and are, accordingly, not pertinent. The public schools belong to the public. Private schools do not. Students stand in different position as to each class of schools. Compare, *People ex rel.*

*Pratt v. Wheaton College,* [not tax exempt], 40 Ill. 186, and *The State ex rel. Stallard v. White, et al.,* 82 Ind. 278.

Plaintiffs refer us to *Anthony v. Syracuse University,* 223 N. Y. S. 798, where it was held that Syracuse University is a quasi-public institution. The judgment for plaintiff in that case was reversed in 231 N. Y. S. 438. Furthermore, the Regents of the State of New York had visitorial powers at Syracuse University. The State of Illinois has not visitorial power at Northwestern University. Mandamus against the trustees of the University of Illinois, a public corporation (*People v. Barrett,* 382 Ill. 321) had been refused on the ground that enactment of the rule—attacked by the petition—involved official discretion (*North v. Trustees of the University of Illinois,* 137 Ill. 296).

Plaintiffs complain Tinkoff, Jr. was denied the right to contract as guaranteed by the Illinois and United States constitutions. We need only say that he had no right to contract with the University. His right to contract for and pursue an education is limited by the right which the University has under its charter. We see no merit to plaintiff's contention that the rules and regulations were an offer of contract and his compliance therewith and acceptance giving rise to a binding contract. The wording of the bulletin required further action by the University in admitting Tinkoff, Jr. before a contract between them would arise. (Williston on Contracts, rev. ed., vol. 1, p. 277.) Plaintiff has no right based upon a trust relationship with the University. Tinkoff, Jr. did not become a beneficiary upon compliance with the entrance requirements. We think he remained, at most, a potential beneficiary (*Dartmouth College v. Woodward*) until he was actually admitted.

We see no merit to the contention that the University violated the right of Tinkoff, Sr. to supervise and guide the education of his child. What right

he had in this respect was likewise limited by the University's right to full lawful exercise of its charter powers without interference from the State through the legislature or courts.

In conclusion, we hold that the complaint shows no clear right to the writ sought. (*People v. City of Chicago*, 382 Ill. 500, 508.)   34 Am. Jur., p. 829. Judgment is accordingly affirmed.

*Judgment affirmed.*

BURKE and LEWE, JJ., concur.