**National Wrecking Company, a Corporation, Plaintiff-Appellant, v. City of Chicago, a Municipal Corporation, Defendant-Appellee.**

Gen. No. 52,927.

First District.

August 21, 1970.

Arnstein, Gluck, Weitzenfeld & Minow, of Chicago (Burton Y. Weitzenfeld and Michael R. Turoff, of counsel), for appellant.

Raymond F. Simon, Corporation Counsel of City of Chicago (Marvin E. Aspen and RocLyne E. LaPorte, Assistant Corporation Counsel, of counsel), for appellee.

MR. PRESIDING JUSTICE CRAVEN delivered the opinion of the court.

The defendant, City of Chicago (hereinafter referred to as "City"), solicited bids for the wrecking of some sixty-two buildings as part of an urban renewal project. Plaintiff, National Wrecking Company (hereinafter referred to as "National"), was the successful bidder and was awarded the contract for the wrecking.

This litigation is an outgrowth of difficulties arising between the parties as to extra work allegedly made necessary by the City's action in stopping on-site burning, thus necessitating extra hauling of debris. Further, National makes claim for the salvage value of plumbing and heating fixtures that allegedly disappeared from the buildings to be wrecked and to which National asserts title.

National filed its complaint for breach of contract and a jury trial resulted in the court directing a verdict for the City. This appeal is from the judgment thus entered in that action. We affirm.

We turn first to the claim for loss of salvage. This loss is asserted by National to be in the total amount of some $4,097.89 for bathtubs, sinks and radiators missing from the buildings to be wrecked.

The contract between the parties provided that National was required to wreck the buildings and fill the basement areas with inorganic debris to ground level. The contract further provided:

> ". . . Material which in the opinion of the Engineer is not suitable for use as debris fill shall not be so used and shall be removed from the site of the work at no additional cost to the City. If the debris removed from the buildings is insufficient to complete the fill, the Contractor shall furnish all additional material necessary to complete the filling specified without any additional compensation therefor. All or any debris in excess of that required to fill the basements and subsidewalk and vault spaces shall become the property of the Contractor and shall be hauled away from the site."

█ That portion of the quoted language that provides that all debris not needed for fill becomes the property of National and shall be hauled away from the site is the basis for the claimed salvage loss. We agree with the determination of the trial court that this language does not create a contractual right in National to any salvage.

██ Debris and salvageable material are not one and the same. While the quoted language is broad enough to give National title and impose a duty on National to haul away the excess debris, this cannot in any way be interpreted as imposing a contractual duty on the City to see to it that fixtures not be removed by tenants or strangers from the buildings to be wrecked. As we view it, the clear and unambiguous language of the contract compels this result. Rules of construction to aid in ascertaining the intention of the parties are applicable only in the event of the existence of an ambiguity. Such rules are of no utility when there is no ambiguity. The fact that the parties may take divergent views of the contract

208

language does not create an ambiguity. La Salle Nat'l Bank v. Wieboldt Stores, Inc., 60 Ill App2d 188, 208 NE 2d 845 (1st Dist 1965).

Other provisions of the contract clearly establish the intention of the parties as to what would constitute debris and what the obligations of the parties were with reference to it. For instance, debris was not to be allowed to accumulate on roofs or floors, and was to be removed from the site as the work progressed. Debris to be used as fill was to be brick, broken concrete, stone, mortar or similar material removed from the buildings. Material not suitable for fill was to be removed, and if there was not enough fill National was obliged by the contract to haul it in without additional compensation.

■■■ We cannot accept National's contention that the provision vesting title to the debris in National carries with it the necessary connotation that National was contractually entitled to the salvageable material and that the City is liable for breach of contract for the plumbing and heating fixtures which may or may not have been on the premises at the time of the contract. The contract provision providing that title to the debris would be in National, when read with all of the other provisions, leads to the clear conclusion that this was a device to permit National to sell scrap lumber or other parts of the debris if it wanted to, but in any event to clearly establish its obligation to remove the excess from the wrecking site. The trial court was correct when it determined this issue in favor of the City and took the issue from the jury. Jordan v. Ray Schools-Chicago, Inc., 49 Ill App2d 1, 199 NE2d 827 (1st Dist 1964).

The contract provided:

> "(k) If the contractor desires to dispose of any debris or other waste materials under this contract by burning he shall, prior to any burning, secure permission therefor from the Bureau of Fire Preven-

tion, Department of Fire of the City of Chicago, and shall comply with all regulatory measures and directives of said Department."

National was obligated under the terms of the contract to haul waste material and debris from the wrecking site. The contract contemplated the possibility of burning some of this material. The quoted provision took note of this possibility and provided that any burning would have to be pursuant to permit. National, in fact, applied for a permit and received one from the Fire Prevention Bureau. The permit, as issued, authorized the burning of "kindling wood *only* at your wrecking site located at 56th & Harper." (Emphasis in original.) The permit further provided certain terms and conditions for the burning. After having obtained the permit, National hauled material to be burned from the wrecking sites to the burning site. There is some issue presented as to what constitutes "kindling wood" in "moderate proportions." The evidence is that the material to be burned was machine-loaded, then hauled in truckload quantities and included painted and varnished wood and laths with plaster still on them. In any event, the burning was ordered stopped by the Bureau of Engineering. The evidence is that the appropriate City department having authority to revoke a permit is the Fire Prevention Bureau, the issuing agency.

█ We are referred to other ordinances and regulations with reference to burning which could affect the question of the validity of the action in stopping the burning for noncompliance, but as we view this provision there was no obligation on the part of the City by the terms of this contract to permit burning. The contract merely provided that if the contractor desired to burn he would be required to secure a permit and comply with the regulations and directives, etc. This cannot be construed as a contractual obligation by the City to permit of burning. Thus, the contention by National that the

permit was unlawfully revoked is a contention extraneous to an action for breach of contract.

In connection with the revocation of the permit, we have reviewed the cases cited by National with reference to the issuance of a license by a city and the restriction upon license revocation prohibiting arbitrary or capricious action. As we view it, these cases have no application here.

█ Since we have determined that the action for breach of contract on the two issues discussed must fail and that the trial court was correct in directing a verdict, we need not consider the contention of the City that the evidence as to damages—even assuming a contractual obligation—was so speculative that there was in fact no evidence upon which damages could be legally ascertained. The judgment of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

SMITH and TRAPP, JJ., concur.