SANDRA EISELE *et al.*, Plaintiffs-Appellants, *v.* THOMAS G. AYERS *et al.*, Defendants-Appellees.

First District (3rd Division)    No. 78-352

Opinion filed August 30, 1978.

1040

Howard Eglit and Burton Joseph, both of Chicago (Lipnick, Barsy & Joseph, of counsel), for appellants.

George A. Platz, Edna Selan Epstein, and Robert E. Pincham, Jr., all of Sidley & Austin, of Chicago, and Michael C. Weston and James M. Perry, both of Evanston, for appellees.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiffs, second and third year medical students at Northwestern University, commenced this class action on behalf of themselves and all others similarly situated against Northwestern University, its president, and certain of its trustees. The complaint challenged the imposition of a $2,505 increase in tuition for the 1977-78 academic year. Pursuant to section 45 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 45), defendants filed a motion to dismiss the complaint. The trial court dismissed the complaint, holding that the complaint did not state a cause of action against Northwestern for the alleged unwarranted increase at the medical school. The trial court did not rule on the individual defendants' motion to dismiss.

In count I of their four-count complaint, plaintiffs alleged that certain members of the proposed class enrolled at Northwestern for the 1975-76 academic year and entered into an agreement with defendants to pay annual tuition in the amount of $3,930 in exchange for a medical education. The medical school catalogue for that year provided that "tuition and fees are * * * subject to change without notice." Other members of plaintiffs' class entered Northwestern for the 1976-77 academic year with an annual tuition rate of $4,350. The 1976-77 catalogue stated that "tuition and fees are * * * subject to change on short notice" and that "applicants should anticipate continuing yearly increases * * *." Plaintiffs further alleged that Northwestern's president announced that tuition for the 1977-78 academic year would be increased by $2,505. Plaintiffs charged the increase was 57.6 percent more than the previous year's tuition and seven times greater than the past average increase. They charged that the increase was imposed despite the existence of approximately $1,100,000 in Federal and State assistance funds.

Plaintiffs further charged that due to the minimal attrition rates at medical schools throughout the country, they were unable to transfer to another school. As a result, plaintiffs alleged that defendants had imposed upon them a contract of adhesion prepared solely by defendants and leaving plaintiffs with the sole alternative of paying the increased tuition. Plaintiffs sought damages and a declaration that defendants could not obtain a tuition increase greater than the average increase imposed over the past decade. Plaintiffs also sought an order requiring defendants to return any amounts paid by plaintiffs in excess of the average annual increase.

Counts II through IV realleged the substance of count I and requested identical relief. Count II charged that the tuition increase was unreasonable and constituted a material breach of their agreement with Northwestern. In count III plaintiffs charged that the increase in tuition amounted to moral duress of plaintiffs. Count IV claims that by virtue of defendants' past promises they were estopped from imposing the tuition increases.

Plaintiffs, by amendment to the complaint, attached a letter written by Northwestern's president explaining the need for the tuition increase. He stated the decision was prompted by two factors: First, Federal funding had decreased 50% and State funding was committed to faculty salaries. Second, the reserve created by the tuition increase would enable the school to extend grants to persons without financial resources, while imposing a greater burden on those better able to afford it. Thus, the school would be able to select students on the basis of academic achievement rather than have students, in effect, select Northwestern on the basis of their ability to pay. The letter also outlined student loan programs whereby the borrower would not be required to pay more than six percent of taxable income during the repayment period and could obtain an additional three years to retire the loan. If the loan then had not been repaid, the school would be prepared to cancel the balance. As a result of the additional funds available, the maximum debt required to be incurred by any student would not exceed $22,500, an increase of two percent over the maximum indebtedness requirement of the previous year.

In its order granting Northwestern's motion to dismiss, the trial court found "there was no binding contract, concerning 1977-78 or other future tuition at Northwestern University Medical School." The court noted that in the absence of such a contract it could not establish or change tuition rates.

Plaintiffs contend that the trial court erred in finding that the parties had not entered into a binding contract regarding future tuition rates. They maintain that the language in the medical school catalogues providing

that tuition rates are subject to change "without notice" or "on short notice" does not imply that defendants' right to increase tuition is unfettered. They argue that defendants are bound by a standard of reasonableness in deciding whether and by what amount to raise tuition. Under the trial court's ruling, plaintiffs contend that defendants are free to raise tuition by any amount, however exorbitant.

Defendants agree that they are free to raise the tuition rates by virtually any amount, but they argue that in the absence of claim and proof that such action was prompted by malice or taken in bad faith, plaintiffs' financial losses are not redressable by the courts. Plaintiffs have not charged defendants with bad faith, nor have they alleged unjust enrichment. Defendants therefore urge that since the school catalogues issued to plaintiffs provided that tuition rates were subject to change "without notice" and "on short notice" we must uphold the trial court's finding that there was no binding contract regarding future tuition rates.

■■ Bearing in mind that we must take all well-pleaded facts in the complaint as true, we consider whether plaintiffs' complaint stated a cause of action.

■■ Both sides agree that the relationship between a school and its students is contractual in nature and that the relevant terms of the contract are those set forth in the school catalogues. (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 371 N.E.2d 634.) The parties also agree that the catalogues here in question reserved to defendants the right to increase tuition "without notice" or "on short notice." The issues for our determination are whether defendants contracted that future tuition increases would be kept within the average range of increases imposed over previous years and whether they are bound by a standard of reasonableness in exercising their right to raise tuition rates.

An identical argument was considered in *Basch v. George Washington University* (D.C. 1977), 370 A.2d 1364. Plaintiffs, representing a class of approximately 500 medical students of all class years, commenced suit against the university challenging a tuition increase for the 1975-76 academic year. The trial court granted summary judgment in favor of defendant. The 1974-75 bulletin set the tuition rate at $3,200 for that year and further stated:

> "Academic year tuition increases have been estimated as follows: 1975-76, $200; 1976-77; 1977-78, $200; 1978-79, $200 * * *. Every effort will be made to keep tuition increases within these limits. However, it is not possible to project future economic data with certainty, and circumstances may require an adjustment in this estimate."

The university thereafter raised tuition to $5,000 per year for the 1975-76

academic year. Plaintiffs, specifically relying upon the language in the bulletin regarding projected tuition increases, maintained that this increase constituted a breach of their contracts with defendant. The reviewing court affirmed the grant of summary judgment in favor of defendant and held that the quoted language did not bind the university to abide by its projected increases in setting tuition rates. In so holding, the court stated at pages 1367-68:

> "Rather than being definite, the pertinent words from the bulletin, particularly when viewed in combination with each other, are the types of words that preclude accuracy by their very nature. [Citations.] At best, these words expressed an expectancy by the University regarding future increases. This is not a promise susceptible of enforcement."

The court noted that mere expectation on plaintiffs' part of a continued course of conduct was insufficient to create a contractual obligation, even where the disappointment of expectations resulted in a heavy financial loss.

■■ We believe *Basch* controls the outcome of the present action. Its reasoning is sound and we agree with its result. The language in Northwestern's catalogues regarding future tuition increases is much less specific than that considered by the *Basch* court. Under well-established principles of contract law, a contract will not be held binding and enforceable unless its terms are sufficiently definite and certain. (*O'Neill & Santa Claus, Ltd. v. Xtra Value* (1977), 51 Ill. App. 3d 11, 365 N.E.2d 316.) Here, the language relied upon by plaintiffs providing that tuition rates are subject to change "without notice" or "on short notice" is lacking in the certainty necessary to impose a binding obligation upon defendants. It is without the province of the court to rewrite the contract for the parties by imposing an obligation where none was intended. (*Kraftco Corp. v. Koblus* (1971), 1 Ill. App. 3d 635, 274 N.E.2d 153.) Nor can we accept plaintiffs' contention that defendants are bound by a standard of reasonableness which requires them to set tuition rates in accordance with past increases over the decade. The imposition of this standard would be nothing more than enforcing plaintiffs' expectations of future conduct on defendants' part. We heretofore have held that such expectations are insufficient to give rise to a contractual obligation. See *Basch v. George Washington University.*

■■ The catalogues which formed the basis of the contract between the parties reserved to defendants the right to increase tuition. Nothing in the complaint indicates that defendants have exercised this right maliciously or in bad faith. In the absence of such allegations, defendants may not be coerced in the lawful exercise of their discretion. See *People ex rel.*

*Tinkoff v. Northwestern University* (1947), 333 Ill. App. 224, 77 N.E.2d 345; *Manson v. Culver Military Academy* (1908), 141 Ill. App. 250.

Plaintiffs also present several miscellaneous arguments which merit little comment. Plaintiffs cite sections of two statutes as authority for their argument that defendants are bound by a standard of reasonableness in determining future tuition rates. The Privately-Operated Colleges, Junior Colleges and Universities Act (Ill. Rev. Stat. 1977, ch. 144, par. 121 *et seq.*) is inapplicable because it expressly excludes pre-1945 universities such as Northwestern. The Uniform Commercial Code (Ill. Rev. Stat. 1977, ch. 26, par. 1—101 *et seq.*) is inapplicable because it is limited to the sale of goods.

■■ Plaintiffs cite several cases dealing with ambiguous contract terms. We find nothing ambiguous in the language providing that tuition rates are subject to change "without notice" or "on short notice." The language may be indefinite, but it is not ambiguous. The fact that plaintiffs do not agree with defendants' interpretation of these provisions does not create an ambiguity. (*National Wrecking Co. v. City of Chicago* (1970), 128 Ill. App. 2d 205, 262 N.E.2d 735.) The authorities cited by plaintiffs on this point are therefore inapposite.

■■ Plaintiffs' reliance upon the doctrine of part performance likewise is misplaced. This argument is based upon the premise that both sides entered into a four-year contract when plaintiffs enrolled at Northwestern. Such is not the case. The contract is renewable on a semester to semester basis. No obligation to pay tuition arises until a student enrolls four courses each semester. Plaintiffs do not suggest that their initial enrollment at Northwestern obligated them to pay tuition for four years, regardless of whether they completed their studies. Thus, at the time the present tuition increase was announced, plaintiffs were under no obligation to pay.

■■ Plaintiffs also rely upon the doctrine of duress and promissory estoppel. Duress is defined as "a condition where one is induced by a wrongful act or threat of another to make a contract under circumstances which deprive him of the exercise of his free will." (*Hyde v. Lewis* (1975), 25 Ill. App. 3d 495, 501, 323 N.E.2d 533.) There is nothing inherently wrong or oppressive in defendants' decision to raise tuition, particularly in light of the financial realities and reduced Federal funding. Duress is not demonstrated because plaintiffs, at least in part, must bear the additional expense. Similarly, plaintiffs may not raise the claim of promissory estoppel since defendants made no promise to limit future tuition increases to the amount by which it was raised in previous years.

■■■ Plaintiffs finally urge that defendants' unilateral imposition of the tuition increase coupled with plaintiffs' lack of bargaining power,

rendered the contract one of adhesion. Plaintiffs apparently contend that any contract entered into between a student and a school is an adhesion contract since it is prepared solely by the school and cannot be negotiated by the student. To state the proposition is to indicate its fallacy. Courts declare adhesion contracts unlawful because the party in the superior bargaining position has taken unfair advantage of the "adherer" by making the desired product available only if the weaker party accedes to the form of the contract. (See *Star Finance Corp. v. McGee* (1975), 27 Ill. App. 3d 421, 326 N.E.2d 518.) In the present case, defendants are not taking unfair advantage of plaintiffs. On the contrary, the letter from Northwestern's president attached to plaintiffs' complaint indicates that the tuition increase is a financial necessity and that the university will make funds available to those persons unable to bear the additional expense. Plaintiffs state no cause of action based upon a contract of adhesion.

██ Although the trial court did not rule on the individual defendants' motion to dismiss the complaint, it is evident that a favorable ruling in favor of the university also precludes suit against the individual trustees. In approving the increase, the trustees were acting as agents of Northwestern. Plaintiffs' contract was with Northwestern. As agents of a fully disclosed principal, the trustees are not liable on the principal's contracts. (See *Thornberry v. Board of Education* (1972), 8 Ill. App. 3d 351, 290 N.E.2d 360.) No basis exists for imposing liability upon the individual defendants.

For the reasons stated, the judgment of the circuit court of Cook County dismissing plaintiffs' complaint is affirmed.

Judgment affirmed.

JIGANTI, P. J., and McGILLICUDDY, J., concur.