JONATHAN M. ABRAMS, Plaintiff-Appellant, *v.* ILLINOIS COLLEGE OF PODIATRIC MEDICINE, Defendant-Appellee.

First District (4th Division)    No. 78-355

Opinion filed September 27, 1979.

Lawrence Jay Weiner, of Chicago, for appellant.

Russell J. Topper and George W. Alexander, of Economos & Alexander, Ltd., of Chicago, for appellee.

Mr. JUSTICE LINN delivered the opinion of the court:

On September 10, 1974, plaintiff, Jonathan M. Abrams, filed an action in the chancery division of the Circuit Court of Cook County against the defendant, Illinois College of Podiatric Medicine (College), a private educational institution. Plaintiff's complaint alleged a breach of contract by the College and sought, *inter alia*:

(1) An order directing the expunction of all school records indicating his dismissal from the College;

(2) An order directing his reinstatement as a student in the College; and

(3) An order directing the College to give due consideration and accommodation to his learning disability.[1]

The trial court granted the motion of the College for judgment on the pleadings.

Plaintiff appeals, contending that material issues of fact exist which preclude entry of judgment on the pleadings.

We affirm the trial court.

Plaintiff was admitted to the College in early 1973. In his first academic semester, plaintiff failed to attain a passing grade in the course Physiology 101. Plaintiff was given a re-examination in that course, pursuant to the following provision contained in the College's Student Handbook:

"If a student fails a subject in any given semester, he will then be allowed to participate in a second examination or a re-exam. There will be a charge for the re-exam. This should take place within a six-week period following the end of the regular academic semester."

Plaintiff failed to attain a passing grade on re-examination.

The Academic Review Committee of the College conducted a hearing on plaintiff's academic status and sent plaintiff the following letter:

"Dear Mr. Abrams:

The Academic Review Committee has made the following recommendations, which have been accepted regarding your status at the Illinois College of Podiatric Medicine for the second semester of the 1973-74 academic year:

1. You be placed on * * * strict academic probation.

2. You not be permitted to enroll in the second semester of Physiology. * * *

3. You must successfully complete the two (2) semester sequence in Physiology (Physiology 101-203) in order to register as a second year student (sophomore) for the 1974-75 academic year. * * *"

Plaintiff was informed by the College that *if* he passed his reduced course load the second semester (no course having been substituted for Physiology 203), he would be allowed to retake and make up Physiology 101 in the summer.

Plaintiff failed to attain passing grades in two courses his second

---

[1] The record on appeal does not adequately disclose the nature of this alleged disability. Plaintiff's complaint describes it as a "minor neurological disturbance" which results in a slow rate of reading speed.

semester. On June 14, 1974, he was notified by the College that because of his academic standing he was being dismissed from the school:

"Dear Mr. Abrams:

This is to advise you that you have not maintained the proper academic achievement for the Spring semester of the 1973-74 academic year. You were on a strict probation from the previous semester and failed a subject(s).

The Academic Review Committee has taken your scholastic performance at the Illinois College of Podiatric Medicine under advisement. Their recommendations, which have been accepted, is to dismiss you from the college at this time."

Plaintiff subsequently filed this action against the College alleging a breach of contract, and seeking, *inter alia*, expunction of his dismissal from the school, reinstatement, and an order compelling the College to give due consideration and accommodation to his learning disability.

After answering the complaint, the College filed a motion for judgment on the pleadings (Ill. Rev. Stat. 1977, ch. 110, par. 45(5)). The College maintained that plaintiff's complaint failed to state a cause of action as a matter of law.

At the hearing on the motion, extensive arguments were presented by both parties with regard to whether plaintiff's complaint was sufficient to state a cause of action for breach of contract. Additionally, defense counsel informed the trial court that plaintiff had filed another action against the College in the Federal Court for the Northern District of Illinois. Plaintiff's Federal complaint alleged that his dismissal from the school violated the Rehabilitation Act of 1973 (29 U.S.C. §794 (1976)).[2] See generally *Southeastern Community College v. Davis* (1979), ___ U.S. ___, 60 L. Ed. 2d 980, 99 S. Ct. 2361.

When informed of the Federal suit, the trial judge stated:

"This case is either going to be pending here or it's going to be pending over there. It's not going to be pending in both places.

❋ ❋ ❋

You're not entitled to have two actions with the same people involved going at the same time ❋ ❋ ❋."

Plaintiff's counsel responded:

"You're telling me by filing a federal complaint [based upon a violation of a federal statute], I can't come before you and pursue a [contract] cause of action. I don't understand that. ❋ ❋ ❋

❋ ❋ ❋

There are causes that I can pursue in the state [courts] and there are causes I can pursue federally ❋ ❋ ❋."

[2] Plaintiff's Federal action was later dismissed for failure to exhaust administrative remedies.

Following arguments of counsel, the trial court took the College's motion for judgment on the pleadings under advisement for six days. On December 15, 1977, the trial court granted the motion and dismissed plaintiff's complaint with prejudice.

Plaintiff appeals.

OPINION

I

Initially, we note that the College did not properly raise plaintiff's Federal suit as a defense to this action by its motion for judgment on the pleadings (Ill. Rev. Stat. 1977, ch. 110, par. 45(5)). Such a defense should have been raised by a motion to dismiss under section 48(1)(c) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 48(1)(c)),[3] and it should have been supported by affidavit (*People ex rel. Pope County v. Shetler* (1943), 318 Ill. App. 279, 47 N.E.2d 732). Neither of those requirements was met here.

■■ However, as the College correctly points out, the trial court's order granting the motion for judgment on the pleadings does not specify the grounds upon which it was based. Under these circumstances, we may affirm the trial court's dismissal of plaintiff's complaint if there is any sound basis in the record for doing so. *Illinois Racing Board v. Hammond* (1977), 56 Ill. App. 3d 609, 371 N.E.2d 1189; *Morse v. Nelson* (1977), 48 Ill. App. 3d 895, 363 N.E.2d 167; see *Keck v. Keck* (1974), 56 Ill. 2d 508, 309 N.E.2d 217.

II

■■■ The motion by the College for judgment on the pleadings (Ill. Rev. Stat. 1977, ch. 110, par. 45(5)), attacks, as a matter of law, the sufficiency of plaintiff's complaint to state a cause of action (*Cunningham v. MacNeal Memorial Hospital* (1970), 47 Ill. 2d 443, 266 N.E.2d 897). The motion is not concerned with whether there is evidence to support the allegations in the complaint (Laycock, *Dispositive Pre-Trial Motions in Illinois— Sections 45, 48 and 57 of the Civil Practice Act*, 9 Loy. Chi. L.J. 823, 828 (1978)), and it does not envision a review of material beyond the face of the pleadings themselves (see *Baillon v. S.S. Kresge Co.* (1972), 4 Ill. App. 3d 82, 277 N.E.2d 719). Rather, the sole issue raised by the motion for judgment on the pleadings is whether plaintiff's complaint, when read in

---

[3] "(1) Defendant may, within the time for pleading, file a motion for dismissal of the action ° ° ° upon any of the following grounds. ° ° °

° ° °

(c) That there is another action pending between the same parties for the same cause."

Ill. Rev. Stat. 1977, ch. 110, par. 48(1)(c).

light of the defendant's answer (*Oak Park National Bank v. Peoples Gas Light & Coke Co.* (1964), 46 Ill. App. 2d 385, 197 N.E.2d 73), raises a material question of fact as to the existence of a cause of action. For purposes of resolving this issue, we must accept as true the well-pleaded facts in the complaint (*A.A. Erickson Bros. v. Jenkins* (1963), 41 Ill. App. 2d 180, 190 N.E.2d 383), together with all reasonable inferences to be drawn therefrom (*Dryz v. Bol* (1958), 19 Ill. App. 2d 406, 153 N.E.2d 859).

Plaintiff alleges in his complaint, that during the 1973-1974 school year, the College "was apprised of the difficulty [he] was having in pursuing the standard curriculum without modification or deceleration * * *." Plaintiff alleges further that the College informed him, at that time, that he "should not worry, * * * that everything would be done to assist [him], including figuring out some way to help him." Plaintiff contends that this statement by the College gave rise to a binding and enforceable oral contract which was subsequently breached. We disagree.

■■ A binding and enforceable oral contract can not arise unless the terms of the alleged agreement are sufficiently definite and certain. (See *Eisele v. Ayers* (1978), 63 Ill. App. 3d 1039, 381 N.E.2d 21; *Hintz v. Lazarus* (1978), 58 Ill. App. 3d 64, 373 N.E.2d 1018.) An "offer must be so definite as to its material terms or require such definite terms in the acceptance that the promises and performances to be rendered by each party are reasonably certain." (Restatement (Second) of Contracts §32(1) (Tent. Draft No. 1, 1964).) The reason for this rule is obvious.

> "A court cannot enforce a contract unless it can determine what it is. It is not enough that the parties think that they have made a contract; they must have expressed their intentions in a manner that is capable of understanding. It is not even enough that they have actually agreed, if their expressions, when interpreted in the light of accompanying factors and circumstances, are not such that the court can determine what the terms of that agreement are. Vagueness of expression, indefiniteness and uncertainty as to any of the essential terms of an agreement, have often been held to prevent the creation of an enforceable contract." (1 Corbin on Contracts §95, at 394 (1963); see also 1 Williston on Contracts §37 (3d ed. 1957).)

We find that the vagueness and indefiniteness of the statement attributable to the College prevents the creation of a binding and enforceable oral contract.[4]

---

[4] We also note parenthetically that the College did attempt to aid the plaintiff in the pursuit of his studies. It modified and decelerated plaintiff's second semester course load. Additionally, despite the fact that plaintiff had already failed Physiology 101 twice, the College promised that he could make up this required course during the summer break if he passed his reduced second semester course load.

■ Plaintiff next invokes the general rule that the basic legal relationship between a student and a private university or college is contractual in nature, and the catalogues, bulletins, circulars and regulations of the institution, made available to the student, become a part of that contract. See *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 371 N.E.2d 634; *Eisele v. Ayers* (1978), 63 Ill. App. 3d 1039, 381 N.E.2d 21.

Plaintiff alleges in his complaint that during the 1973-1974 school year he "did not receive periodic information with respect to his [academic] progress * * * nor recommendations for improvement" in violation of the following Student Handbook provision:

> *"Evaluation of the Student*
> *It is desirable* that the instructor should periodically inform the student of his progress * * *. The student should be informed soon after mid-term examinations of his standing *with recommendations, if necessary,* for improvement."

Plaintiff contends that the violation of this provision amounted to a breach of contract. We disagree.

■ This particular provision in the Student Handbook was *not* an offer or a promise by the College which created a power of acceptance in the plaintiff. The provision was more in the nature of an unenforceable expression of intention, hope or desire. (1 Corbin on Contracts §15 (1963).) It did not justify an understanding that a commitment had been made by the College (Restatement (Second) of Contracts §2 (Tent. Draft No. 1, 1964)), and it was not communicated to the plaintiff in such a way as to invite the payment of tuition in reliance thereon. We find that this provision in the Student Handbook was an expression by the College of an unenforceable expectation which plaintiff did not have the power to transform into a binding contractual obligation.

Finally, plaintiff alleges in his complaint that by refusing to permit him to take a re-examination in the two courses he failed second semester, the College violated the retest provision in the Student Handbook:

> "If a student fails a subject in any given semester, he will then be allowed to participate in a second examination or a re-exam."[5]

Based upon this premise, plaintiff builds the following argument: (1) if the College had allowed him to take the re-examinations, he might have passed both of them, thereby acquiring a D in each course; (2) he then would have passed his entire second semester course load and would have qualified to retake Physiology 101, the required course he failed twice the first semester; and (3) if he passed Physiology 101 and then

---

[5] The College Catalog explains that if a student passes a re-examination "a grade no higher than D is recorded."

passed Physiology 203, he might have been able to maintain a 2.0 grade-point average for his first academic year and, thereby, become eligible for promotion into the sophomore class.

■■ Plaintiff's argument must fail because of its faulty premise. The College Catalog explains that the re-examination policy outlined in the Student Handbook is limited to a "single course" a semester. Consequently, plaintiff did not have the right to take a re-examination in both courses he failed second semester. It would have been futile and meaningless for the College to have offered plaintiff a re-examination in only one of these two courses since even if plaintiff had prevailed on the one re-examination he still would not have passed his entire second semester course load and he still would not have qualified to retake Physiology 101.

Accordingly, for the reasons stated, we affirm the judgment of the trial court.

Affirmed.

JOHNSON and ROMITI, JJ., concur.