CRAIG WILSON, Plaintiff-Appellee, *v.* ILLINOIS BENEDICTINE COL-
LEGE, Defendant-Appellant.

Second District   No. 82—386

Opinion filed February 10, 1983.

James Saloga, of Nadelhoffer, Hennessy, Dommermuth & Brestal, of Naperville, for appellant.

Patrick Mahoney & Associates, of Chicago, and Thomas V. O'Connor, of Wheaton, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Illinois Benedictine College (hereafter IBC), defendant, appeals the granting of an injunction by the circuit court of Du Page County, requiring IBC to graduate the plaintiff, Craig Wilson, at its May 23, 1982, commencement and to award him a bachelor of arts degree, provided he received a grade of "D" or better in each of his 1982 spring semester courses. On May 20, 1982, this court stayed enforcement of this injunction pending appeal. On appeal, IBC contends that the circuit court erred in denying its motions to dismiss the complaint and for summary judgment, and in granting this mandatory injunction, arguing that the contract between IBC and Wilson, the IBC Bulletin 1978-79 (hereafter Bulletin), was not ambiguous in setting forth the necessary requirements to be eligible for graduation.

Wilson, an accounting major at IBC, filed a two-count complaint against IBC after being informed that his failure to receive a grade of "C" or better in two economics courses precluded him from graduating until he retook those courses. In count I, a specific performance count, Wilson alleged, *inter alia*, that a contract exists between him and IBC by virtue of the Bulletin which provides that IBC would certify Wilson for graduation if he completes certain courses and pays the necessary tuition; that he fulfilled or will fulfill his obligations pursuant to this contract by the end of the 1982 spring semester; that IBC, without any basis, wrote a letter to him informing him that he could not be certified for graduation; and that he has no adequate remedy of law. In count II, requesting a mandatory injunction and declaratory relief, Wilson realleged the allegations set forth in count I, and added that no advisor in IBC's student advising system advised him that he would have to repeat the two courses in which he received "D's"; that the Bulletin is ambiguous; that IBC's agents refused to waive any of these requirements; that IBC and its agents acted arbitrarily and capriciously; and that irreparable harm results.

Wilson began his studies at IBC during the fall of 1978. He received a copy of the Bulletin during the prior summer and chose accounting as a major when he registered. In the spring of 1980 term, he took a macroeconomics course and received the grade "D"; the next fall he took microeconomics and also received a "D." He re-

ceived a copy of his grade report at the end of each semester which revealed these grades. He never discussed or inquired about the effect of these grades with his advisor or any faculty member or administration official. He never consulted the Bulletin to determine the effect of these grades.

On February 2, 1982, during the last semester before Wilson expected to graduate, he received a letter from IBC stating that he would not be allowed to graduate because he failed to receive grades of "C" or better in the two economics courses. He sought a waiver of this requirement but Dr. Margarete P. Roth, chairperson of the economics department until 1981, and Dr. Hull, refused to waive this requirement. Wilson was referred to the dean, Dr. Marvin E. Camburn, yet Wilson never met with him. Dr. Roth testified that she never has and never would waive the requirement that a student receive a "C" or better in these courses because they are important courses and waiver could harm IBC's reputation. Wilson would have graduated but for the two "D's" he received in these courses.

Professor Norman Gierlasinski, Wilson's junior and senior year advisor, never discussed the impact that the two "D's" would have on Wilson's graduation prospects although he met with Wilson every semester and knew that he anticipated graduating in May 1982. Gierlasinski testified that he did not know that Wilson had received those grades, and that had he known he would have talked to Wilson about them. Grade reports, however, found in Wilson's advisor's file revealed that Wilson received "D's" in those two courses. That file also contains checkoff sheets which keep track of a student's completion of courses needed for graduation but do not mention the required grades. Gierlasinski discussed with Wilson the courses needed according to this requirement sheet to fulfill his graduation requirements. He first realized Wilson's deficiency when Wilson called him concerning the receipt of the letter of February 2, 1982.

Although IBC has a deficiency notice system by which a professor sends a notice to the student when a student is doing poorly in a course, a copy of which is placed in his advisor's file, no such notice was issued in Wilson's economics courses. Thomas J. Dyba, executive vice-president of IBC, explained that the reason for this lack of notice could be that where a student appears to be doing well in a course, no notice is sent even though that student may eventually end up receiving a "D."

Dean Camburn testified that an advisor need not go over a student's file during that student's junior year. Thomas Dyba testified that both the student and the advisor have the responsibility to know

whether a course needs to be retaken.

After Wilson received the notification from IBC he rejected various options offered by Mr. Dyba to secure his graduation: retaking macroeconomics during the current term and participating in an independent study project in lieu of retaking microeconomics; taking one course at another college and transferring the credits; or taking summer school with permission to be absent for two weeks for his planned wedding and honeymoon to California. Wilson intended to take the certified public accountant's review course during the summer, although he was not certain whether he was going to take the examination in November. He had received a full-time job offer from the place where he had been working part-time, but his salary had not yet been determined. The job offer did not require Wilson to take the CPA examination. During Wilson's tenure at IBC, he never took more than 15 hours a semester and currently was taking 15 hours. He admitted, however, that had he decided to take extra hours of the economics courses during the current semester, it would not have been excessive because he had already been exposed to the material.

The Bulletin provides in pertinent part: a student must earn 120 semester hours and maintain a "C" average during his college career; "[o]nly courses in which a student has received a 'C' or better may be applied to the major" and "[r]epetition may be required if the student received 'D' in a course in his or her major and specific departmental regulations so require ***." The Bulletin then discusses the various majors and minors and sets forth the required courses utilizing different language to explain the requirements: at times the Bulletin states that a student must *successfully complete* certain courses; other times it states that a student must *satisfactorily complete* certain courses. With respect to economics majors, which encompasses accounting, Wilson's major, a student must *successfully complete* microeconomics and macroeconomics. The Bulletin further provides that, "Since students are responsible for their own academic programs, and for meeting the requirements of their major department, it is recommended that they meet with their faculty advisors for counseling at least once each semester."

On the day set for trial, IBC filed a motion for summary judgment, which the court denied. At the close of the evidence, IBC renewed this motion and made an oral motion to dismiss the complaint for failure to state a cause of action pursuant to section 45 of the Civil Practice Act, recodified as section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—615). The court denied both of these motions. The trial court found that the use of different

language in the Bulletin relating what courses a student must complete created an ambiguity because the term "satisfactorily" implies a grade of "C" while the use of "successfully" could mean something less than a grade of "C," and concluded that since a "D" is a passing grade, Wilson fulfilled the requirements for graduation.

Although IBC presents four issues for review, we need merely determine whether the mandatory injunction was properly entered and whether the deficiencies in IBC's brief require this court to dismiss the appeal. The resolution of these two issues is dispositive of the appeal. We find it unnecessary, therefore, to consider the additional issues presented. A reviewing court will not consider questions or contentions which are not essential to the determination of the case before it. *Yale Development Co. v. Andermann* (1976), 37 Ill. App. 3d 33.

■ Wilson's brief first argues that this court should either dismiss IBC's appeal or summarily affirm the judgment below based upon certain deficiencies in IBC's brief. Reviewing courts may dismiss an appeal where the appellant's brief fails to comply with supreme court rules applicable to briefs. (*47th & State Currency Exchange, Inc. v. B. Coleman Corp.* (1977), 56 Ill. App. 3d 229, 232.) In *Coleman*, the court explained that Supreme Court Rule 341(e) (87 Ill. 2d R. 341(e)),

"is not an arbitrary exercise of the supreme court's supervisory powers. Its purpose is to require parties to proceedings before a reviewing court to present clear and orderly arguments for that court's consideration.

Briefs are for the benefit of the reviewing court. They should be prepared in accordance with the applicable supreme court rule. They should follow the sequence set forth in the rule to the end a reviewing court may properly ascertain and dispose of the issues involved." 56 Ill. App. 3d 229, 232.

Nevertheless, since Rule 341(e) is an admonishment to the parties, and not a limitation upon this court's jurisdiction, this court may nevertheless consider the merits of a party's appeal. (*Brown v. Brown* (1978), 62 Ill. App. 3d 328, 332.) While Wilson's brief points to various defects in IBC's brief, and despite the fact that IBC's brief may be organized in an unusual manner, a cogent legal argument may be discerned from it. Therefore, this court will review the merits of IBC's appeal.

The determinative issue presented for review is whether the trial court erred in granting a mandatory injunction requiring defendant college to graduate the plaintiff and award him a bachelor of arts degree.

An injunction is an extraordinary remedy which is only granted after the plaintiff establishes the existence of a lawful right, irreparable harm, and an inadequate remedy at law. (*Distaola v. Department of Registration & Education* (1979) 72 Ill. App. 3d 977, 980; *Baugher v. Walker* (1977), 47 Ill. App. 3d 573, 577.) The right sought to be protected must be certain and clearly ascertainable. (*Potter v. School Directors of District No. 87* (1974), 17 Ill. App. 3d 781, 783.) A mandatory injunction, moreover, does not have judicial favor and is issued only with caution and in the sound discretion of the court. *Malchow v. Tiarks* (1970), 122 Ill. App. 2d 304, 311.

■■■ A college or university and its students have a contractual relationship; the relevant terms of the contract are set forth in the university's catalogs. (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 331-32; *Eisele v. Ayers* (1978), 63 Ill. App. 3d 1039, 1043.) A contract between a private institution and a student confers duties upon both parties which cannot be arbitrarily disregarded and may be judicially enforced. (*DeMarco v. University of Health Sciences* (1976), 40 Ill. App 3d 474, 480.) A student may have a remedy when it is alleged that an adverse decision concerning the student, supposedly for academic deficiencies, was made arbitrarily and capriciously and in bad faith (40 Ill. App. 3d 474, 480); thus a university may not act maliciously or in bad faith by arbitrarily and capriciously refusing to award a degree to a student who fulfills its degree requirements. *Tanner v. Board of Trustees* (1977), 48 Ill. App. 3d 680, 683.

■ In the instant case, the parties agree that the Bulletin constitutes a contract between them; their disagreement concerns the interpretation of that contract and whether any ambiguities exist in it. A contract will not be held binding and enforceable unless its terms are sufficiently definite and certain. (*Eisele v. Ayers* (1978), 63 Ill. App. 3d 1039, 1044.) A contract is ambiguous when the language used is reasonably susceptible to more than one meaning. (*In re Marriage of Arkin* (1982), 108 Ill. App. 3d 103, 108.) The fact that a plaintiff does not agree with a defendant's interpretation of these provisions does not create an ambiguity. (*Eisele v. Ayers* (1978), 63 Ill. App. 3d 1039, 1045; *National Wrecking Co. v. City of Chicago* (1970), 128 Ill. App. 2d 205, 208-09.) Whether a contract is ambiguous presents an issue of law so that a reviewing court may independently construe the contract unrestrained by the trial court's judgment. *Marvin N. Benn & Associates, Ltd. v. Nelsen Steel & Wire, Inc.* (1982), 107 Ill. App. 3d 442, 446; *Ancraft Products Co. v. Universal Oil Products Co.* (1981), 100 Ill. App. 3d 694, 697.

■ The trial court erred in finding that the Bulletin was ambigu-

ous. It clearly states that, "Only courses in which a student has received a 'C' or better may be applied to the major," and informs the student that he may have to repeat a course in his major if he received a "D" and if specific departmental regulations so require. While it is true that the Bulletin's listing of required courses for accounting majors states that a student must "successfully complete" certain courses, the use of different words to outline courses necessary for other majors does not create an ambiguity. Reading the Bulletin as a whole and giving meaning and effect to every provision thereof because it is presumed that every clause in the contract was inserted deliberately and for a purpose (*Joseph v. Lake Michigan Mortgage Co.* (1982), 106 Ill. App. 3d 988, 991) shows that the trial court's interpretation of the Bulletin was in error. For example, biochemistry majors, according to the Bulletin, need to *complete* certain courses; minors, however, must *satisfactorily complete* certain of the same courses. Adopting the trial court's interpretation of the contract would mean that the contract requires more stringent standards for minors than majors, an unrealistic result. The Bulletin requires that biology minors must satisfactorily complete certain courses and notifies the student that "only courses in which a grade of C or better was earned may be counted." If satisfactory means receiving a "C" or better, as Wilson advocates, then this section of the Bulletin would be redundant. Clearly, the purpose of the college notifying the biology minor of the need to receive a "C" or better is because a "C" or better is normally required only from majors in a particular field. Similar indicators that the terms "complete," "successfully complete," and "satisfactorily complete," represent the same concept are replete in the Bulletin. Thus, in light of the two provisions quoted earlier, no ambiguity exists in the Bulletin: a student must receive a "C" or better in a course in the student's major to have it credited.

Had there been a protectible right, the mandatory injunction may have been proper. No clear remedy at law existed. For a legal remedy to be deemed adequate, it must be clear, complete, and as practical and efficient to the ends of justice in its prompt administration as the equitable remedy. (*City of Chicago v. Festival Theatre Corp.* (1982), 91 Ill. 2d 295, 314; *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 549.) A threatened breach of contract may be enjoined. (See *Sports Unlimited, Inc. v. Scotch & Sirloin* (1978), 58 Ill. App. 3d 579.) Since the withholding of a diploma is a unique injury, it justifies equitable relief. *DeMarco v. University of Health Sciences* (1976), 40 Ill. App. 3d 474, 481.

Whether IBC's action created irreparable harm, however, is not

as clear. Wilson presented evidence showing irreparable harm, in that many of his plans would have to be delayed. IBC attempted to contradict at trial the actual impact that Wilson's delayed graduation would have. Since in a bench trial, as in the present one, the trial judge weighs the evidence and draws from it proper inferences and conclusions; these conclusions will not be disturbed on review unless they are contrary to the manifest weight of the evidence. (*American Food Management, Inc. v. Henson* (1982), 105 Ill. App. 3d 141, 147.) Inasmuch as irreparable harm does not mean injury that is beyond repair nor beyond compensation in damages, and rather, denotes transgressions of a continuing nature (*SSA Foods, Inc. v. Giannotti* (1982), 105 Ill. App. 3d 424, 428), it cannot be said that the trial court's finding that there was irreparable harm was against the manifest weight of the evidence.

Wilson further urges that IBC is estopped from refusing to graduate him because its agent, the IBC advisor, and others, never informed him of the consequences of receiving the two grades of "D." Estoppel refers to reliance by one party on the word or conduct of another so that the party changes his position and subsequently suffers harm. (*Vendo Co. v. Stoner* (1982), 108 Ill. App. 3d 51, 55.) It arises whenever " ' " *** one by his conduct, affirmative or negative, intentionally or through culpable negligence, induces another to believe and have confidence in certain material facts, and the latter having the right to do so, relies and acts thereon, and is as a reasonable and inevitable consequence, misled, to his injury." ' " (*Allstate Insurance Co. v. Horn* (1974), 24 Ill. App. 3d 583, 588.) Estoppel must be proven by clear unequivocal evidence. (*Jozwick v. Jozwick* (1979), 72 Ill. App. 3d 17, 21.) Although an intent to mislead is not required, the reliance must be reasonable. (*Shockley v. Ryder Truck Rental, Inc.* (1979), 74 Ill. App. 3d 89, 95.) The mere passage of time without action by one party does not by itself bring this doctrine into effect. (*In re Estate of Neirinck* (1978), 62 Ill. App. 3d 189, 192.) Furthermore, to claim reliance on the conduct of another, which could be silence or statements, the party must have acted without knowledge of the truth of the matter relied upon. (*Shockley v. Ryder Truck Rental, Inc.* (1979), 74 Ill. App. 3d 89, 94.) Finally, the conduct of the person seeking the benefit of the doctrine may be scrutinized. *Forest Investment Corp. v. Chaplin* (1965), 55 Ill. App. 2d 429, 434.

■ In the instant case, since the Bulletin contained no ambiguity, it is not reasonable for Wilson to have relied on the lack of warnings by his advisor or other agents of IBC. The Bulletin provides that "students are responsible for their own academic programs and

for meeting the requirements of their major department." Wilson testified that after he received each "D" he never inquired about its effect or read the Bulletin to determine its effect. Perusal of the Bulletin surely would have put him on notice that he should have made some sort of inquiry. Any obligation of IBC or its agent to notify Wilson of a deficiency which he wishes to infer from the Bulletin lacks support. While the Bulletin "recommends" that students "meet with their faculty advisors for counseling at least once each semester," that does not create any obligation to so meet. More accurately, that provision is more in the nature of an unenforceable expression of intention, hope, or desire, and was not communicated to Wilson in such a way as to invite payment of tuition in reliance thereon. (See *Abrams v. Illinois College of Podiatric Medicine* (1979), 77 Ill. App. 3d 471, 477.) Thus, since the reason for IBC's action is clearly stated in the Bulletin, neither IBC nor its agents acted in violation of the Bulletin or acted in an arbitrary or capricious manner. Where their conduct complied with the contractual relationship, and was not discretionary, it cannot be said that IBC and its agents acted arbitrarily or capriciously. See *Aronson v. North Park College* (1981), 94 Ill. App. 3d 211; *Eisele v. Ayers* (1978), 63 Ill. App. 3d 1039.

The judgment of the circuit court of Du Page County is reversed.

Judgment reversed.

SEIDENFELD, P.J., and LINDBERG, J., concur.