**James MERROW**

v.

**David GOLDBERG, Joseph Mark, W. Boyd Barrick and James Davidson.**

**Civ. A. No. 86–193.**

United States District Court, D. Vermont.

Nov. 2, 1987.

William A. Hunter, Tepper & Dardeck, Rutland, Vt., for plaintiff.

Paul K. Sutherland, Sutherland Associates, Inc., Burlington, Vt., for defendants.

## OPINION AND ORDER

BILLINGS, District Judge.

Plaintiff in this case claims, pursuant to 42 U.S.C. § 1983, that without due process of law, defendants, officers of Castleton State College ("Castleton"), deprived him of a property interest in educational credits awarded him by Castleton and that defendants breached a contract between plaintiff and Castleton. Plaintiff seeks to have restored to his academic transcript the credits expunged by Castleton. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1343 and the doctrine of pendent jurisdiction.

On July 27, 1987 and continuing on August 17, 1987, the Court heard evidence from which it makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

The plaintiff has, for the past 21 years, been a teacher at the vocational center in the Mount Anthony School in Bennington, Vermont. He is employed by the Southwest Vermont Supervisory Union ("SVSU"). Plaintiff has a Master's degree from Bennington College and one from North Adams State College.

Plaintiff enrolled in continuing education courses sponsored by Castleton State College. He received credits for taking at least 16 courses. None of the credits given plaintiff by Castleton have been used by him in connection with his teacher's certification, nor has plaintiff's salary been affected by the Castleton credits. He is at the top of the pay grade scale based on his Master's degrees. Plaintiff enrolled in the Castleton courses solely for professional and personal enrichment.

Since at least the 1973–1974 academic year, Castleton has sponsored numerous continuing education courses in the Bennington area. Various instructors, including personnel from the SVSU, submited course proposals to Castleton. If a course was approved, it was advertised in a course

circular. The instructor, through school district interoffice mail, attempted to secure enrollees in the number required to give the course. Usually, courses were offered during the summer recess or during the fall semester. Courses might consist of class work, research or independent study. Instructors orally advised the enrollees as to the requirements in each course. There were no brochures, outlines or syllabi distributed in connection with the courses.

In 1985, Castleton learned that questions were arising as to whether a number of continuing education courses it sponsored were actually given and whether students purportedly enrolled in the courses actually did any work to obtain credit. In response to these questions, Castleton, aided by counsel, set up a Credit Review Panel ("Panel") consisting of two faculty members and one Castleton administrator to review the courses in question.

Pursuant to a process described below, the Panel was to determine whether each credit in each course in question had been legitimately earned. The question of culpability was not considered by the Panel, which was instructed, in part, as follows:

A student by student, course by course, determination is to be made as to whether credit was earned or not earned. No determination of guilt or lack of guilt, of wrongdoing or lack of wrongdoing, is appropriate.

Defendants' Exhibit F. Upon deciding whether a credit was correctly awarded, the panel was to report its finding to the Academic Dean. Defendant Dr. David Goldberg, Castleton's Director of Continuing Education and Graduate Studies since 1984, was appointed "Principal Investigator" for the panel. Dr. Goldberg was relieved of his duties as Director of Continuing Education and Graduate Studies in October of 1985 to devote full time to the investigation.

On June 23, 1985 Dr. Goldberg first contacted plaintiff concerning doubtful courses. Plaintiff's wife answered the telephone and summoned plaintiff, who told Dr. Goldberg that he had enrolled in and taken Biology 101 and 102 from Neil Cunningham on an independent study basis. Approximately three weeks later, after subsequent telephone calls, plaintiff continued to affirm that he had taken the courses. Plaintiff now states that he was confused as to the dates of the courses and admits that he was out of the country and never took Biology 101 and 102.

In January 1986, as part of Dr. Goldberg's investigation, plaintiff and his then attorney met with Dr. Goldberg and defendants' attorney at the Paradise Restaurant in Bennington. During the meeting, all of the doubtful courses and resulting credits were discussed. Plaintiff was asked about others who had taken the same courses, where the courses met, and the subject matter considered in the courses. At the conclusion of Dr. Goldberg's investigation he reported his findings and recommendations to the Credit Review Panel. His report was based on his discovery of facts concerning the courses and students, as well as his opinion regarding students'—including plaintiff's—credibility. Dr. Goldberg also submitted his file notes to the panel.

In early 1986 Dr. Goldberg met with the panel. Plaintiff was neither invited to nor notified of this meeting. In March, 1986, as a result of their meeting with Dr. Goldberg, the Panel notified plaintiff in writing that they had made a preliminary determination of substantial doubt as to whether the credits awarded plaintiff should remain on plaintiff's transcript. Defendants' exhibit D.

The two-page letter of notification indicated that the Credit Review Panel would hold a hearing to consider all information relevant to plaintiff's case. The letter listed each course as to which plaintiff's credit was in doubt. Plaintiff was asked to attend the hearing and was informed that if he wished to attend without counsel the hearing would be held on April 8, 1986. If plaintiff did wish to have counsel present, he was instructed to call Castleton to so inform the panel in order that the hearing could be rescheduled for a date when Castleton's counsel would be available. En-

closed with the letter were copies of the Credit Review Panel Procedures, Defendants' Exhibit E, and the Credit Review Panel Instructions, Defendants' Exhibit F. At the hearing, information would be presented as to whether the courses had been given, whether plaintiff had participated, and whether plaintiff was entitled to the credits. Plaintiff or his counsel could review the evidence, question the Credit Review Panel, cross-examine any witnesses, and present any information he wished to present. The letter strongly encouraged plaintiff to attend the hearing and stated that if plaintiff did not attend, it would be helpful if he sent the panel a statement and any relevant documentary materials.

Plaintiff replied to the Panel by letter dated March 31, 1986. Defendants' Exhibit U. Plaintiff indicated that he did not plan to attend the hearing or to offer any evidence except what was contained in the letter. He stated that he had earned the credits awarded. Plaintiff forwarded to the Panel five letters from instructors in some of the courses under review. Defendants' Exhibits P, Q, R, S & T. Each letter stated that defendant had taken the instructor's course. Either by his own decision or based upon the advice of counsel, plaintiff did not attend the hearing which was held on April 8, 1986.

At the hearing Dr. Goldberg presented to the Credit Review Panel all of the material that he had assembled and gave his investigative report. Upon conclusion of the hearing the Credit Review Panel went into executive session, discussed the matter, and rendered a final decision. Under date of May 2, 1986 the Panel forwarded its decision to plaintiff. Defendants' Exhibit G. In that communication plaintiff was told that he was entitled to appeal the decision to the Academic Dean by giving the Dean written notice of appeal, including the grounds supporting the appeal. Plaintiff was informed that he could have a hearing on his appeal at which he could be represented by counsel.

On May 7, 1986 plaintiff wrote to the Academic Dean indicating that he wished to appeal the decision. Defendants' Exhib-

it H. He stated that he relied on his earlier correspondence with Castleton and maintained that he was entitled to all credits. He indicated that he would not appear to appeal the decision and he did not so appear.

Subsequent to plaintiff's letter, in late summer of 1986, the Academic Dean reviewed the decision of the panel in plaintiff's case to determine whether the decision was reasonable and based upon substantial evidence. Upon review of the entire file and the transcript of the Panel's hearing, the Academic Dean sustained the Panel's decision.

The Academic Dean notified plaintiff and the Registrar of his decision. Defendants' Exhibits I and J. Plaintiff's academic record was modified by expunging or reducing credits in accordance with the Credit Review Panel's decision as affirmed.

In plaintiff's case, 11 courses came under review. As a result of the panel's review process, 27 credits were expunged from plaintiff's transcript. In all but two courses, all of plaintiff's credits were expunged; in the remaining two, the credits earned were reduced from three to one.

Plaintiff received credit for Biology 101 and 102 in 1980. When contacted by Dr. Goldberg by telephone in the summer of 1985, plaintiff initially indicated that he took the courses either by attending class or on an independent study basis. Subsequently, however, plaintiff did not contest the fact that he never took the courses or did any work in connection with them. Plaintiff conceded that he was not entitled to credit, stating that at the time the courses were supposed to have been given he was in England and France.

Plaintiff does acknowledge that he signed a registration card for the courses. He states that upon his return from overseas in 1980 he telephoned Castleton concerning the credit error. The credit remained on plaintiff's transcript until it was expunged in 1986, however, and in the meantime he did nothing to rectify the error.

Plaintiff received credit for English 231 and 397, survey courses in American litera-

ture, allegedly given by Neil Cunningham in the summer of 1981. Plaintiff concedes that he received credit for these courses although he never took the courses. He admits that he did not try to rectify the record until he was contacted by Dr. Goldberg. Credit for these courses was expunged from plaintiff's transcript.

Plaintiff received credit for Education 646, "Reading in Content Areas," a course given in the spring of 1984 by Barbara Banchik. Plaintiff describes Eduction 646 as an independent study course which did not involve classes. He states that he wrote a 20 page paper for the course and received a grade of "A" or "B". Plaintiff is unable to produce the paper he wrote because, he states, it is his practice, after the return to him of papers, examinations or records, to destroy the same. Plaintiff followed this practice even though a number of the papers he wrote involved research in his particular field.

Plaintiff and his instructor differed substantially as to the amount of time involved in the course. The instructor claims that she met three or four times per week during her lunch hour with plaintiff. Further, she claims that she talked to plaintiff about the course on the telephone, because plaintiff was not well during the time that this course was given and she did not want to extend his school day. The students, on the other hand, reported that they spent one to one-and-a-half hours per day for fifteen weeks on the course. The Credit Review Panel reduced the credits given plaintiff for this course from three to one.

Plaintiff received credit for Education 697, "Public School Administration," a course given in the spring of 1985 by Neil Charest. Plaintiff states that he wrote an extensive paper on the history of vocational education for this course; he is now unable to provide the paper or related materials and he provided none for the Panel. When first contacted by Dr. Goldberg, plaintiff stated that he took the course by regular classroom study. Plaintiff subsequently maintained that he took the course on an independent study basis. The panel determined that plaintiff did some work in the course, but reduced the credits given from three to one.

Plaintiff received credit for Eduction 667, "Organization and Operation of Guidance Services," a course allegedly given in the fall of 1981 by Louis J. Parotta. Plaintiff claimed that this course was given on an independent study basis, as well as on a classroom basis, and that he wrote a paper on staff organization. Dr. Goldberg determined that four students were enrolled in the course. Two of the students claimed no credit and had no knowledge of the course ever having met. The other two students, including plaintiff, disagreed as to the content of the course and as to where and when it met. The Panel expunged plaintiff's credits for this course.

Plaintiff received credit for Education 513, "Public School Finance," a course given in the spring of 1979. The course work included classroom attendance and a paper. Upon initial inquiry plaintiff could not remember who the instructor was although he subsequently indicated that it was George Sleeman. George Sleeman did not teach the course. In addition, other students enrolled in the course did not recall that plaintiff ever attended the course. The panel expunged plaintiff's credits for this course.

Plaintiff received credit for Education 597, "Issues in Educational Administration," allegedly given in the fall of 1979 by Richard Sleeman. Plaintiff indicated that this course consisted of classroom work and examinations, as well as a research paper. The instructor, although somewhat vague as to the numbers and roster of the course, indicated that he thought there were 13 students enrolled. It ultimately appeared that there had been 12 students on the class roster. Four of the 12 were not actually in the course and one of those was unknown in the Bennington area and had never resided there. No student remembered plaintiff being present for the course and several were certain that he had not been present. The panel expunged plaintiff's credits for this course.

Plaintiff received credit for a second course numbered Education 597, "Adminis-

tration in Physical Education and Athletics." This course was allegedly given in the spring of 1982 by Louis J. Parotta and based on class work and preparation of a research paper. Plaintiff initially indicated that the course consisted solely of class work. Of the eight students allegedly enrolled, four said that there had been no work at all in the course and that they deserved no credit. The remainder stated that the course was given on an independent study basis. The Panel expunged plaintiff's credits for this course.

Plaintiff received credit for Education 598, "Topics in Education Finance," allegedly given in the summer of 1978 by George Sleeman and consisting of class work. Plaintiff was the only one of six students interviewed who could not recall that the focus of the course was a new "coding system" which then had major significance to public school systems in Vermont. Further, plaintiff indicated that there was a textbook for the course while all other students interviewed indicated that the course was based on random materials, not a textbook. The panel expunged plaintiff's credits for this course. All exhibits in evidence in this case are found as findings of fact.

## DISCUSSION

█ The parties agree that plaintiff has a property interest in credits awarded him by Castleton, which interest is entitled to protection under the Due Process Clause of the Fourteenth Amendment of the United States Constitution. We are unable to find a case considering due process protection of a student's college or graduate school credit. It seems clear, however, that public college and university graduates have protected property interests in their degrees. *See Crook v. Baker*, 813 F.2d 88 (6th Cir.

1987); *Waliga v. Board of Trustees of Kent State University*, 22 Ohio St.3d 55, 488 N.E.2d 850 (1986). Since degrees are awarded as the result of accumulated credits, the parties agree that credits should be entitled to protection similar to that afforded degrees.[1]

Assuming, then, the existence of a protected property interest, we take the fundamental question in this case to be whether Castleton's expungement of plaintiff's credits was carried out in a manner which violated the procedural and substantive guarantees of the Due Process Clause of the Fourteenth Amendment. To answer this question we must first establish, as far as possible, the content of the protections afforded by procedural and substantive due process in this case.

### A. *Procedural Due Process*

Courts can apply no rigid formulas to determine what process is due in cases of this nature. "[T]he interpretation and application of the Due Process Clause are intensely practical matters." *Goss v. Lopez*, 419 U.S. 565, 577–78, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975).

> The exact procedures mandated by due process will vary from one context to another, *Bell v. Burson*, [402 U.S. 535,] 540 [91 S.Ct. 1586, 1590, 29 L.Ed.2d 90] [(1971)], for the "very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Cafeteria & Restaurant Workers Union, Local 473 v. McElroy*, 367 U.S. 886, 895 [81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230] (1961).

*Buck v. Board of Educ.*, 553 F.2d 315, 318 (2d Cir.1977). Courts must bear in mind that their role is simply to assure that the " 'procedural requirements ... demanded

---

1. Apparently because defendants indicated prior to trial that they did not contest this issue, *see* defendants' Memorandum of Law filed July 27, 1987 at 3, plaintiff did not attempt to prove "that his 'understanding of entitlement' to the credits has an objective basis in Castleton's 'policies and practices' of general application. *Easley v. University of Michigan Board of Regents*, 627 F.Supp. 580, 584–85 (E.D.Mich.1986), quoting *[Board of Regents v.] Roth*, [408 U.S. 564, 92

S.Ct. 2701, 33 L.Ed.2d 548 (1972)] and *Perry v. Sinderman*, 408 U.S. 593, 603 [92 S.Ct. 2694, 2700, 33 L.Ed.2d 570] (1972)." *Merrow v. Goldberg*, 674 F.Supp. 1130, 1133 (D.Vt.1986) (denying motion to dismiss property interest claim). Consequently, we make no conclusion of law as to whether plaintiff has a protected property interest in his credits; instead, we assume the existence of such an interest.

by rudimentary due process,' " are provided. *Buck,* 553 F.2d at 318 (quoting *Goldberg v. Kelly,* 397 U.S. 254, 267, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287 (1970)).

Of course, case law and commentary aid us in determining whether the procedures afforded meet or exceed the process due in a particular case. In *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the United States Supreme Court stated:

> Our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by official action; Second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 334–35, 96 S.Ct. at 902–03.

Consistent with this framework, the requirements of the Due Process Clause vary with the institutional setting in which the deprivation of an interest takes place. Within the broad category of decision making affecting interests of individual students, the Court has distinguished between disciplinary decisions and academic decisions in evaluating the process provided in particular cases. *See Board of Curators of the University of Missouri v. Horowitz,* 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978).

> [T]he significant difference between the failure of a student to meet academic standards and the violation by a student of valid rules of conduct ... calls for far less stringent procedural requirements in the case of an academic dismissal.

*Id.* at 86, 98 S.Ct. at 953.

The decision made by Castleton in the instant case, that plaintiff had not done sufficient work to earn the credits previously awarded him, was an academic decision and we evaluate it as such.[2]

*Horowitz* held that the academic decision to dismiss a student from medical school did not require a hearing. 435 U.S. at 86–91 and n. 3, 98 S.Ct. at 953–56 and n. 3. In this case defendants nevertheless, perhaps believing that the private interest at stake where credits had already been awarded was greater than the private interest where the student was only a candidate for a degree, *Cf. Mathews,* 424 U.S. at 335, 96 S.Ct. at 903, provided plaintiff with notice and a hearing, among other procedural safeguards. These safeguards were part of a comprehensive, albeit tardy, process that Castleton determined was required before making a number of academic decisions.

Among the specific procedural safeguards Castleton provided to plaintiff were the following: Notice on several occasions, by telephone, in person, and in writing of the academic decision under consideration and of the particular courses in which the school had substantial doubt plaintiff had earned credit; a Credit Review Panel consisting of two faculty members and an academic administrator who, while employees of the college, had no direct involvement in the courses in question; an opportunity to be heard by the Panel; an opportunity to be represented by counsel of his choice before the Panel; an opportunity to hear the evidence against him, to respond to that evidence, and to present evidence in his favor; and an opportunity to appeal the decision of the Panel to the Academic Dean and to be heard and represented by counsel in that appeal.

In light of the foregoing list, which contains many of the "procedural safeguards" to which the Court referred in *Mathews,* 424 U.S. at 335, 96 S.Ct. at 903; *see* Friendly, *Some Kind of Hearing,* 123 U.Pa.L. Rev. 1267 (1975), it is clear that we deal in this case with the marginal benefit of any additional process rather than with a total

---

**2.** Even were we to consider Castleton's decision in this case a disciplinary or hybrid decision, *see Crook v. Baker,* 813 F.2d 88, 97, (6th Cir.1987), the process afforded plaintiff by Castleton as evaluated in the text met the standard of the Due Process Clause.

denial of process. Plaintiff points to seven ways that the process afforded plaintiff by Castleton was deficient by the standards of the Due Process Clause. We note that the majority of plaintiff's objections are phrased conditionally, reflecting the fact that he made little attempt to utilize the numerous procedural safeguards offered to him.

Plaintiff first argues that the notice provided him was deficient because it did not warn him of the evidentiary basis for the charge that he had received credits which he did not earn. As noted above, plaintiff had notice (as well as an opportunity to be heard) from Dr. Goldberg by telephone as well as at the Paradise Restaurant meeting. Plaintiff also received a letter, Defendants' Exhibit D, informing him of the specific courses in which his credits were questioned. Thus, plaintiff had "a statement of the charges in sufficient detail and sufficiently in advance of the hearing to enable [him] to prepare a defense." *Rutz v. Essex Junction Prudential Committee*, 142 Vt. 400, 420, 457 A.2d 1368 (1983) (Billings, J. dissenting). We are not at all sure that plaintiff should not be presumed, based on the school's extensive communication with him, to know the evidentiary basis for the proposed expungement of credit. In any event, in light of this prior communication and his opportunity for a relatively formal hearing, had he or his counsel attempted to, plaintiff certainly could have learned more about the evidentiary basis for Castleton's proposed action. *Cf. Buck*, 553 F.2d at 318 ("In the specific context of educational employment, the Supreme Court has expressed the due process standard as requiring a hearing *where* the employee can be informed of the grounds for his or her possible discharge and can challenge their sufficiency. *Perry v. Sindermann*, 408 U.S. 593, 603, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972)." (emphasis added)).

Plaintiff's second objection is that the tribunal was not impartial in that all of its members were Castleton employees and they met with Dr. Goldberg prior to plaintiff's hearing in a meeting not open to plaintiff. Plaintiff argues that the panel should have included members from outside the college and should not have met with Dr. Goldberg privately. First, the meeting with Dr. Goldberg was held in order to decide whether to proceed at all to consider expunging plaintiff's credits. Such a determination of "substantial doubt" by the Panel, particularly in view of plaintiff's opportunity to learn the evidence against him and present evidence in his favor cannot be said to have fatally compromised the Panel's impartiality.

As for the composition of the tribunal, " '[a] graduate or professional school is, after all the best judge of its students' academic performance and their ability to master the required curriculum.' " *Horowitz*, 435 U.S. at 85, 86 n. 2, 98 S.Ct. at 952, 953 n. 2 (quoting *Greenhill v. Bailey*, 519 F.2d 5, 9 (8th Cir.1975)).[3]

Plaintiff's remaining objections to the procedural safeguards provided by Castleton are that the allocation of the burden of persuasion and the standard of proof were unfair; the evidence the Panel received was unreliable; the Panel considered material outside of that presented at plaintiff's hearing; the Panel failed to present plaintiff with a statement of its reasons for expunging his credits, thus limiting the effectiveness of his right to appeal; and defendants supplemented the record on appeal without allowing plaintiff to do the same. While these arguments, as well as those already discussed, may indicate areas in which the process afforded plaintiff could have been finetuned to approach procedural perfection, such surgical modification is not our purpose here. Our concern is that Castleton provide constitutionally mandated process. We refer again to the *Mathews* factors. 424 U.S. at 335, 96 S.Ct. at 903. Plaintiff's credits do not directly affect his employment or his salary; his

---

**3.** Plaintiff's argument that in these hearings the college itself was on trial is not persuasive. Every time a student fails, the school, in a sense, has failed. The fact that Castleton's failure in this case may have been particularly acute does not constitutionally require us to relieve it of its right to evaluate the performance of its students.

interest in them appears to be one of intellectual enrichment. We respect such an interest, as did Castleton, which went to substantial expense to protect it from unfair interference. Procedures in addition to or instead of those provided by Castleton would not reduce the risk of erroneous deprivation of plaintiff's interest, particularly in view of plaintiff's minimal willingness to participate in any procedures. In this case, the Due Process Clause required no more than the procedural protections Castleton provided.

### B. *Substantive Due Process*

Plaintiff argues that he has a substantive due process right which the Panel violated in making its decision by considering uncorroborated hearsay testimony and disregarding the material with which plaintiff presented them.

The Supreme Court wrote recently on this issue:

> When judges are asked to review the substance of a genuinely academic decision, such as this one, they should show great respect for the Faculty's professional judgment. Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.

*Regents of University of Michigan v. Ewing,* 474 U.S. 214, 225, 106 S.Ct. 507, 513, 88 L.Ed.2d 523 (1985) (footnote omitted). The Court based this directive upon "concern for lack of standards" regarding substantive due process guarantees as well as its "responsibility to safeguard ... academic freedom, 'a special concern of the First Amendment.'" *Id.* at 226, 106 S.Ct. at 514 (footnote omitted) (quoting *Keyishian v. Board of Regents,* 385 U.S. 589, 603, 87 S.Ct. 675, 683, 17 L.Ed.2d 629 (1967)).

■ Continuing to assume that plaintiff has a property interest in credits awarded and further assuming that this "property interest gave rise to a substantive right under the Due Process Clause to [retention of credits] free from arbitrary state action," *Regents of University of Michigan*

*v. Ewing,* 474 U.S. 214, 223, 106 S.Ct. 507, 512, 88 L.Ed.2d 523 (1985), we find no such arbitrary action here. *See also, Connelly v. University of Vermont and State Agricultural College,* 244 F.Supp. 156 (D.Vt. 1965) (Dismissal of medical student for receiving failing grade; burden is student's to show dismissal was arbitrary, capricious or in bad faith.).

### C. *Contract*

Plaintiff also claims that his relationship with Castleton is contractual in nature and that defendants' actions amounted to a breach of contract.

■ Between a student and a college there is a relationship which is contractual in nature. *E.g., Wilson v. Illinois Benedictine College,* 112 Ill.App.3d 932, 68 Ill. Dec. 257, 262, 445 N.E.2d 901, 906 (1983). The terms of the contract are contained in the brochures, course offering bulletins, and other official statements, policies and publications of the institution. *Id.* If a student performs financially, academically and behaviorally in accordance with the college rules and regulations, he is entitled to the credits in the courses in which he enrolled. *Id.*

■ Here, plaintiff breached the contract by failing to perform academically according to the college's, or any reasonable, standards. As a result, defendants are relieved of any obligation under the contract.

### CONCLUSION

As discussed above, plaintiff's rights under the Due Process Clause have not been violated by defendants and defendants did not breach their educational contract with plaintiff. The Clerk is directed to enter judgment for defendants in accordance with the foregoing findings of fact and discussion.

SO ORDERED.