Betty and Jay **REYNOLDS** v. **STERLING COLLEGE, INC.**

[750 A.2d 1020]

No. 98-396

January 28, 2000. Plaintiffs Betty and Jay Reynolds appeal from a summary judgment in favor of defendant Sterling College, Inc. in their action to obtain a partial refund of tuition paid to defendant. In response to plaintiffs' claim that defendant owed a refund under the policy in effect at the time they commenced paying tuition, the court held that defendant had validly reserved the right to modify its tuition reimbursement policy and had done so. Accordingly, it dismissed plaintiffs' claims for breach of contract and consumer fraud. We reverse and remand.

The complaint, answer, affidavits and depositions filed by the parties disclose the following facts. In the Spring of 1995, Jay Reynolds was accepted to Sterling College. Before making any payments, Betty Reynolds, Jay's mother, read the catalog, which covered the years 1994 through 1996, particularly its policy on tuition refunds for students who withdraw before the end of the academic year. The catalog policy provided for a pro rata refund of prepaid tuition based on the ratio of the number of weeks remaining in the academic year after withdrawal to the total number of weeks in the academic year. A footnote to this policy, however, added the following:

> *At press time, the Tuition Refund policy is under revision to comply with requirements of the federal Higher Education Amendments of 1992. Please consult the refund policy accompanying all tuition bills or request a copy of the policy in effect during your attendance.*

Prior to sending the $500 dollar enrollment fee on May 1, 1995, Betty Reynolds claims to have called defendant's business office to inquire about the refund policy. She was told that the catalog policy was still in effect and no revisions had yet been made. She stated at her deposition that she relied upon the refund policy, and would not have paid the enrollment fee if she knew it had been modified to favor

defendant. Along with the enrollment fee, both plaintiffs filled out and signed a registration form which stated: "I have read and agreed to the terms of the Tuition and Refund policy."

Betty Reynolds commenced making tuition payments in July. No new refund policy accompanied the tuition bills. When Jay arrived on campus on September 25, 1995, a copy of a new refund policy, effective July 1, 1995, was waiting in his mail box. Jay attended defendant college until January 5, 1996, when he voluntarily withdrew. By that time, Betty had paid defendant $14,104 out of a total comprehensive fee of $18,167 for the year. Under the new policy, defendant determined that plaintiffs were entitled to a refund of $379 and sent them a check for that amount. It is undisputed that the refund would have been much larger under the catalog policy.

Plaintiffs argued below that the tuition refund policy contained in the catalog was part of the contract entered into between plaintiffs and defendant when Jay Reynolds enrolled, and defendant did not have the unilateral power to modify it. They also argued that the statements of defendant's employees and those in its catalog "were material misrepresentations of the Sterling College refund policy" that induced plaintiffs to enter into an enrollment agreement in violation of the Consumer Fraud Act. See 9 V.S.A. § 2453. The superior court ruled that, in view of the footnote, the catalog policy was not a contract term; the refund policy was not an essential term of the contract between plaintiffs and defendant; and the agreement contemplated that defendant could unilaterally supply this term at a later date. Consistent with its ruling on the breach of contract claim, the court dismissed the consumer fraud claim because there was no "unfair and deceptive act or practice."

In ruling on a motion for summary judgment, we use the same standard as the trial court. A party is entitled to summary judgment if there are no genuine issues of material fact and the party is entitled to judgment as a matter of law. See *Lane v. Town of Grafton*, 166 Vt. 148, 150, 689 A.2d 455, 456 (1997).

The relevant relationship between the parties is contractual. See *Merrow v. Goldberg*, 672 F. Supp. 766, 774 (D. Vt. 1987). The "terms of the contract are contained in the brochures, course offering bulletins, and other official statements, policies and publications of the institution." *Id.* In this case, the tuition refund policy was a specific and concrete term of the contract between plaintiffs and defendant. Defendant recognized this by specifically requiring that plaintiffs agree to the terms of this policy on the registration form. Plaintiffs are entitled to enforce the tuition refund policy by this action for damages from defendant's alleged breach. See *Southeastern Flight Academy v. Hazell*, 444 S.E.2d 402, 404 (Ga. Ct. App. 1994).

At the time the contract was formed — when plaintiffs paid the enrollment fee and signed the registration statement — the catalog stated the effective refund policy. Thus, we do not agree with the superior court that we should treat this contract as one for which the parties have agreed that a term would remain open. See, e.g., *Appropriate Technology Corp. v. Palma*, 146 Vt. 643, 645-46, 508 A.2d 724, 725-26 (1986) (contract had open term as it did not include a date of payment); *Batchelder v. Mantak*, 136 Vt. 456, 465, 392 A.2d 945, 950 (1978) (contract had open term because it did not specify amount of compensation). A refund policy was in effect at all times. Even defendant would agree that plaintiffs had a right to have tuition refunds calculated under the catalog policy unless that policy was replaced by the new policy.

Rather than leaving the refund policy open, defendant attempted to reserve to itself the unlimited power to modify the

policy. We agree with the New Hampshire Supreme Court's analysis in *Gamble v. University System of New Hampshire*, 610 A.2d 357, 361 (N.H. 1992), that this attempt to reserve the power to modify created an internal inconsistency and an ambiguity in the contract between the parties. As the court implied in describing the University of New Hampshire's attempt to raise tuition after the plaintiffs had paid under the existing tuition rate, the obligation of the student to prepay tuition and the university's power thereafter to modify it are inconsistent. See *id.* at 361. The reasonable expectation of the student was that the power to raise tuition was extinguished once the student paid:

> This court will, where possible, avoid construing the contract in a manner that leads to harsh and unreasonable results or places one party at the mercy of the other. To interpret the contract as the defendants urge us to would leave the student at the mercy of the University. The University, by the reservation of rights clause, does not have the right to arbitrarily raise the tuition after the registration time deadline. It is inconceivable that the University could retain carte blanche authority to raise the tuition at any time during the semester for any amount it deems appropriate.

*Id.* (internal citation omitted). See also *Viles v. Vermont State Colleges*, 168 Vt. 459, 462, 724 A.2d 448, 450-51 (1998) (ambiguity in standardized contracts drafted by party in stronger bargaining position and best able to avoid ambiguity must be resolved against drafter). In the instant case, plaintiffs commenced paying tuition with no notice of a change in the tuition refund policy.[1] Indeed, the paragraph inserted in the catalog reserving the defendant's right to modify the tuition refund policy stated that those paying tuition on behalf of students would receive notice of changes in the refund policy with their tuition bills. However, no notice was provided until after substantial tuition was paid. As a matter of law, we construe the contract between the parties to give plaintiffs the tuition refund rights provided in the catalog once they commenced paying tuition.[2]

We also conclude that a unilateral modification, going to a specific and definite term like the amount of tuition to be paid, must be supported by consideration. See *Brody v. Finch Univ. of Health Sciences*, 698 N.E.2d 257, 267 (Ill. App. Ct. 1998); see also *P.F. Jurgs & Co. v. O'Brien*, 160 Vt. 294, 303, 629 A.2d 325, 331 (1993) (modification of stockholders' agreement to calculate equity interest of stockholders in closely-held business on office-by-office basis rather than in whole business is valid because consideration provided by mutuality of agreement and effect on all stockholders); E. Farnsworth, Contracts § 7.6, at 492 (1990). There was no consideration for modification of the contract in this case. We do not believe that

---

[1] We see no distinction between this case and *Gamble* in the fact that the student in that case had fully prepaid tuition and the student here was paying under an installment plan that did not require full prepayment. In either case, the inconsistency and ambiguity is the same.

[2] The record indicates that defendant changed its tuition refund policy to comply with federal law for students receiving federal aid. It also indicates, however, that plaintiffs were not subject to the federal law because they were receiving no aid. As a result, we do not consider any effect that compliance with federal law might have had on defendant's power to unilaterally change its tuition refund policy.

defendant's warning that it might attempt to modify the refund policy alters this analysis.

In reaching our conclusion, we have relied only upon undisputed facts. Thus, we conclude that plaintiffs are entitled to summary judgment on their contract claim. We remand for calculation of damages and reconsideration of plaintiffs' consumer fraud claim in light of this decision.[3]

*Reversed and remanded.*

Motion for reargument denied March 14, 2000.

---

[3] Plaintiffs do not directly appeal the dismissal of their consumer fraud complaint, but argue that its resolution is related to the disposition of the contract claim and should be reconsidered if the dismissal of the contract claim were reversed. We agree.