13-2614-cv
*Knelman v. Middlebury College*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of June, two thousand fourteen.

PRESENT:   BARRINGTON D. PARKER,
           DENNY CHIN,
           RAYMOND J. LOHIER, JR.,
                    *Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

JAMES "JAK" KNELMAN,
                    *Plaintiff-Appellant,*


                    v.                                    13-2614-cv


MIDDLEBURY COLLEGE, BILL BEANEY,
                    *Defendants-Appellees.*


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR PLAINTIFF-APPELLANT:          JOSEPH W. ANTHONY (Mary L. Knoblauch,
                                  *on the brief*), Anthony Ostlund Baer &
                                  Louwagie P.A., Minneapolis, Minnesota, *and*
                                  Robert F. O'Neill and Andrew D. Mantisky,
                                  Gravel and Shea PC, Burlington, Vermont.

FOR DEFENDANTS-APPELLEES:    KAREN McANDREW (Wm. Andrew MacIlwaine, *on the brief*), Dinse, Knapp & McAndrew, P.C., Burlington, Vermont.

Appeal from the United States District Court for the District of Vermont (Reiss, *C. J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-appellant James "Jak" Knelman appeals the district court's judgment dated June 11, 2013 in favor of defendants-appellees Middlebury College ("Middlebury") and Bill Beaney. By opinion and order dated September 28, 2012, the district court granted summary judgment in favor of defendants dismissing certain of Knelman's claims. By stipulation entered June 10, 2013, the parties agreed to dismiss all remaining claims. We assume the parties' familiarity with the facts, procedural history, and issues on appeal.

Knelman, a former student at Middlebury, was dismissed from the hockey team in his junior year by Beaney, the hockey coach. Knelman brought this diversity action below, alleging a number of claims. On appeal, Knelman argues that the district court erred in granting summary judgment as to his breach of contract and breach of fiduciary duty claims. First, he avers that Middlebury breached its contract with him because the student handbook (the "Handbook") and the manual for the National

Collegiate Athletics Association (the "NCAA Manual") provided certain due process protections such that Beaney could not unilaterally dismiss him from the team. Second, he argues that Middlebury and Beaney owed him a fiduciary duty, which they breached by failing to afford him due process.

"We review a district court's grant of summary judgment *de novo*, construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor." *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005). "We will affirm the judgment only if there is no genuine issue as to any material fact, and if the moving party is entitled to a judgment as a matter of law." *Id.*

### 1.    *Breach of Contract*

Under Vermont law, the relationship between a student and a college is "contractual." *Reynolds v. Sterling Coll., Inc.*, 750 A.2d 1020, 1022 (Vt. 2000) (citing *Merrow v. Goldberg*, 672 F. Supp. 766, 774 (D. Vt. 1987)). The "terms of the contract are contained in the brochures, course offering bulletins, and other official statements, policies and publications of the institution." *Id.* (quoting *Merrow*, 672 F. Supp. at 774) (internal quotation marks omitted). But "[c]ourts should be wary of the wholesale application of commercial contract principles in the academic context." *Fellheimer v. Middlebury Coll.*, 869 F. Supp. 238, 243 (D. Vt. 1994). Indeed, not every provision of a

college handbook is an enforceable part of a contract; rather, "specific and concrete" provisions of these documents are enforceable. *See Reynolds*, 750 A.2d at 1022.

Here, Knelman points to the disciplinary procedures set forth in the "Judicial Board and Procedures" section of the Handbook, which provides that "[d]ue process, insofar as the procedures of the College permit, will be afforded the party charged." (App. 1035). Knelman avers that these due process protections are part of his contract with Middlebury and require that sanctions imposed by coaches upon athletes must follow the same disciplinary procedures outlined in the Handbook. We disagree. The disciplinary procedures provisions of the Handbook do not, by their terms, apply to coaching decisions. Rather, they apply to "non-academic conduct infractions," "non-academic disciplinary offense[s]," "academic dishonesty," and "plagiarism." (App. 1035-37). A decision by a hockey coach to suspend a player from the team for leaving a team dinner early does not fall into any of these categories. *See Lamoille Grain Co. v. St. Johnsbury & Lamoille Cnty. R.R.*, 369 A.2d 1389, 1390 (Vt. 1976); *In re Stacey*, 411 A.2d 1359, 1361 (Vt. 1980) ("A contract will be interpreted by the common meaning of its words where the language is clear.").

As the district court pointed out, the Handbook specifies certain sanctions for non-academic offenses, but it does not include athletic penalties, such as benching an athlete for a certain number of games, suspension from a team, or any other reprimand a coach might mete out. Moreover, the "Athletics" section of the Handbook

- 4 -

makes no reference to the "Community Judicial Board," the body with jurisdiction over non-academic conduct infractions. There is thus no indication -- let alone a "specific and concrete" statement -- that Middlebury intended its disciplinary process to encompass a coach's discipline of members of his team. *See Martin v. Shepard*, 365 A.2d 971, 974 (Vt. 1976) ("We do not read into a contract a term not expressly included unless it arises by necessary implication from the provisions of the instrument.").

Nor did the Handbook purport to incorporate the NCAA Manual's so-called "fairness provisions" by reference. (Sp. App. 19). Under Vermont law, "a contract may be reached with reference to another writing, and the other document, or so much of it as is referred to, will be interpreted as a part of the main instrument," but "the extrinsic writing must be connected by *specific reference* or by such mutual knowledge and understanding on the part of both parties that reference by implication is clear." *Newton v. Smith Motors, Inc.*, 175 A.2d 514, 516 (Vt. 1961) (emphasis added). Although sections of the Handbook mention other parts of the NCAA Manual, the Handbook contains no "specific reference" to the NCAA Manual's provisions relating to disciplinary procedures. Because the Handbook does not specifically incorporate those portions of the NCAA Manual, they are not part of Knelman's contract with Middlebury.

While Coach Beaney's decision to bar Knelman from the team for the remainder of the season was arguably harsh, there was no breach of contract. "It is not

the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion." *Wood v. Strickland*, 420 U.S. 308, 326 (1975).

## 2. *Fiduciary Duty*

Knelman concedes that Vermont courts have never found a fiduciary relationship between a college and its students but nonetheless urges us to recognize one here. We are in no position to do so, for the existence of such a relationship is a matter of state law. Under Vermont law, a fiduciary relationship arises "when one person is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Handverger v. City of Winooski*, 38 A.3d 1158, 1161 (Vt. 2011) (internal quotation marks omitted). While schools, colleges, and educators assume the responsibility of educating their students, the law does not recognize the existence of a special relationship for the purposes of a breach of fiduciary duty claim. *See Foster & Gridley v. Winner*, 740 A.2d 1283, 1287-88 (Vt. 1999) (summary judgment appropriate where party alleging fiduciary duty adduced no evidence of a special relationship); s*ee also Bass v. Miss Porter's Sch.*, 738 F. Supp. 2d 307, 330 (D. Conn. 2010) (noting that no "state or federal court within the Second Circuit [has held] or even suggest[ed] that a secondary school -- public or private, boarding or day-session -- or its employees owe a fiduciary duty to its students."); 78A C.J.S. Schools & School Districts

§ 1107 ("A private school, school officials, and school teachers do not owe a fiduciary duty to a student presenting educational and behavioral problems.")

We have considered Knelman's remaining arguments and find them to be without merit.  Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk